Des Moines Valley R. R. Co. v. Graff.

---

DES MOINES VALLEY R. R. Co. v. GRAFF *et al.*

1. **Contract: MUTUALITY: RAILROAD SUBSCRIPTIONS.** If one promise to pay another a sum of money if he will do a particular act, and he does the act, the contract is not void for want of mutuality, and the promisor is liable, though the promisee did not at the time of the promise engage to do the act ; for, upon the performance of the condition by the promisee, the contract becomes clothed with a valid consideration which relates back and renders the promise obligatory. It is accordingly held, that if certain subscribers promise and undertake to pay a railroad company a certain sum or sums if it will build its road to a designated place, the subsequent completion of the road, according to the terms of the promise, furnishes in itself a consideration, removes the objection of want of mutuality, and renders the promise binding upon the subscribers.

2. Railroad: SUBSCRIPTIONS IN HANDS OF TRUSTEES: RIGHTS OF COM-
PANY. Defendants, as a committee acting in behalf of the citizens
of P., entered into an undertaking to furnish the right of way, depot
grounds and cattle yards, and "to obtain subscriptions for the Des
Moines Valley Railroad Company, in accordance with the blank
notes furnished by the company for that purpose, to an amount of
at least ten thousand dollars, provided said company run its track
through P." Defendants, in accordance with this undertaking,
obtained a lage amount of subscriptions in the form of notes condi-
tioned to be paid so soon as trains were running from K. to P., and
containing a proviso that they were to be void if the trains were not
thus running on or before a certain date. The road was not com-
pleted to P. until about two and a half months after this date. In
an equitable proceeding by the company to require defendants, upon
their refusal, to make known the name of each subscriber, the
amount of each subscription, and to deliver the notes thus held by
them over to the company, it was *held*, on demurrer to the petition
containing these averments, that the facts alleged entitled plaintiffs
to the relief asked, that the defendants were mere trustees in hold.
ing the subscription notes, and not entitled to interpose the defense,
which properly belonged to the subscribers or makers of the notes,
and which they might not desire to avail themselves of, that the
notes were void because the road was not completed to P. at the
date stipulated.

*Appeal from Marion District Court.*

TUESDAY, APRIL 13.

IN EQUITY.—Demurrer to petition sustained, and plaint-
iff appeals.

The facts as shown by the petition are these : In April,
1864, defendants, as a committee appointed by the citi-
zens of Pella, undertook in writing, for and on behalf of
said citizens, to furnish the *right of way, depot grounds*
and *cattle yards,* "and to obtain and secure subscriptions
for said company in accordance with blank notes already
presented by said company for that purpose, to an amount
of at least ten thousand dollars." * * " Provided
said company runs its track through Pella as heretofore
surveyed." The consideration for this agreement was

the undertaking of the company to build its road through said town of Pella. Defendants in accordance with said agreement obtained a large amount of subscriptions, equal or near said $10,000, the same being in the form of promissory notes. These notes provided for the payment to the company of so many dollars, so soon as the trains were running from Keokuk to Pella: *provided* that they were to be void *if the said trains were not running on or before the 1st of October*, 1864.

They are in defendants' hands, but their number, by whom made, the amount of each, or their aggregate amount, petitioner cannot state. It is claimed that if defendants failed to obtain the full amount of available subscriptions, then they should pay the deficiency, and they should disclose what notes or subscriptions they have, and surrender the same to plaintiff. The subscribers to these notes and these defendants were citizens residing in and near Pella, who were to be and were greatly benefited by the construction of said road, and plaintiff was induced to build its road to that place by the promises and obligations contained in said contract.

The road was not completed to Pella until about *two and one-half months* after the said 1st of October, 1864. To excuse the delay, the petition sets up the character of the season, being rainy, etc., and also the then existing rebellion, rendering it impossible to obtain men to work, etc. In all other respects plaintiff fulfilled its contract.

The prayer is that defendants be required to make known the name of each subscriber, the amount of each subscription, its form and condition, and to deliver the same to the plaintiff, and that they be adjudged to pay any deficiency of said subscription, or the whole of said $10,000 (less a certain payment of $500), in case of their failure to deliver up said subscriptions and notes.

So far as material to be noted, the grounds of the demurrer were: 1. The facts stated were not sufficient to entitle plaintiff to the relief asked. 2. It appeared that plaintiff failed to comply with certain conditions precedent. 3. No sufficient excuse is stated for the failure to complete the road by the time fixed.

*Henry Strong* and *Stone, Ayres & Curtis* for the appellant.

*Seevers & Cutts* for the appellees.

WRIGHT, J.—My first impression was against this bill. Subsequent reflection, and a more careful examination of its averments and objects, have led me to believe that the demurrer was improperly sustained.

There need be no controversy as to many, and, indeed, most of the positions assumed by appellees. Thus, it is conceded that the excuses set up for not completing the road by the time fixed are of no moment. Plaintiff *made its engagement;* failed to provide against bad weather or other contingency; and it was its own fault or folly that, by reason of these matters, it was unable to fulfill its contract. Having voluntarily assumed the obligation, the contract was binding; and neither accident nor necessity would excuse.

So, too, it is admitted that the contract would not be binding, if not supported by a sufficient consideration; nor should it be enforced, if wanting in mutuality. Nor do I controvert the proposition that, as a rule, specific performance will not be decreed, if adequate compensation can be made in damages for the breach of a contract of a personal character; or if the delivery of the thing, *in specie*, be really not important. And if this controversy was between plaintiff and the makers of the notes, and they should insist upon plaintiff's failure to comply with

its contract as to the *time* of completing the road, I should feel constrained to hold against the right to recover. This was substantially held in *B. & M. R. R. Co.* v. *Boestler*, 15 Iowa, 555, and *Thompson* v. *Oliver*. 18 id. 417.

But I do not believe that, as to this question, appellees occupy the position of the subscribers; of which, however, more hereafter. Then, as to the want of mutuality and a consideration : it is plain law that, if A. promise to pay B. a sum of money if he will do a particular act, and B. does the act, A. is liable, though B. did not, at the time of the promise, engage to do the act; for, upon the performance of the condition by the promisee, the contract is clothed with a valid consideration, which relates back, and the promise at once becomes obligatory. *Goodpaster* v. *Porter*, 11 Iowa, 161, and cases there cited. Plaintiff alleges performance on its part; and thus is a consideration shown, and the objection of a want of mutuality removed. The rule as to specific performance has no place; for plaintiff seeks to charge defendants as trustees, as parties occupying a trust relation, having funds or property in their hands, for which they refuse to account. If they have these subscription notes, plaintiff is entitled to them — could, by bill in equity, compel their surrender, even though defendants might, at law, be liable in damages for a breach of their agreement to procure and deliver. In such a case, plaintiff might elect to recover the specific notes, or their value, by an action at law upon the contract. The solvency or insolvency of defendants is of no moment, under such circumstances. Plaintiff would have a right to insist upon the execution of the trust. For, in equity, the notes would belong to the company, and defendants could not, by a violation of their trust duty, defeat the recovery of the specific articles. It would make no difference that the money might answer as well as the notes.

1. CONTRACT: mutuality: railroad subscriptions.

Defendants would be in no position to insist upon this. It is the will, the election, of the beneficiary, and not of the delinquent trustee, that is to be consulted in such cases.

The real and difficult point in the case, however, is, whether plaintiff shows itself entitled to these notes, as against these defendants. The argument against the right, if there be any, is found in the fact that the road was not completed by the 1st of October, and no sufficient excuse for the failure is shown.

2. RAILROAD : subscriptions in hands of trustees : rights of company.

But it must be remembered that *defendants'* contract contains no condition as to the completion of the road, at least as to time. The only proviso is, that the track *shall be run through Pella.* There is no condition that these notes are *not to be delivered* if there is a failure to run trains by the 1st of October, or any other time. The condition is *in the notes,* but not in defendants' obligation. They must stand by *their* contract, and not upon that of others.

Not only so, but, as I have already suggested, defendants are trustees — trustees holding property in which plaintiff is beneficially interested. The charge is that these subscription notes were made and are now in defendant's hands. It is their duty, in my judgment, to surrender them. There is no suggestion that the makers have interposed any objection to paying these notes, and *non constat* that they ever will. It may be that, feeling themselves largely benefited by the completion of the road — though not by the *day named* — they will waive the breach. It may be that they will pay rather than become involved in litigation. Or, possibly, there may be facts estopping the subscribers from insisting upon the failure of the company to have the trains running by the time named. But, in any event, *as the notes were made and*

*placed in defendant's hands, and are still there,* their plain duty is to surrender the same. If they *had never received them,* and plaintiffs were seeking to recover damages for a breach of the agreement, a different question might arise. The notes when made were for the benefit of the company — defendants were mere agents or trustees to hold the same, and it is not for them to refuse to discharge their duty, because, perhaps, the makers have defenses which they will or will not interpose. Suppose, instead of having the notes, they had, at the time of receiving subscriptions, obtained money; or, since that time, had been paid money on the notes, could they be heard to say: " the road was not completed by the time named, and we will therefore keep what we have?" It seems to me clearly not. In view of their relation to plaintiff, and the terms of their undertaking — assuming the facts to be as stated in the petition — defendants cannot be allowed to stand in the place of the subscribers, and, in their name, interpose a defense or defenses which I cannot but believe to be purely personal.

If defendants had obtained deeds in the name of the company for the *right of way, depot grounds or cattle yards,* as contemplated by their agreement, and as clearly provided for as their obligation to secure the subscriptions, could they withhold the same if demanded by plaintiff, upon the ground that the road was not completed by the time named? It is certainly not so " nominated in the bond;" nor, upon any *equitable principle,* should they, as trustees, be allowed to deny the superior rights of the beneficiary, by withholding such title papers. And the same must be true as to the *subscription notes.*

As the record stands, therefore, I think plaintiff is entitled to a discovery of the subscription made, and to a surrender thereof, or any money received thereon. This

is the vital question in the case, and beyond this I need not go at present.

I think the judgment should be reversed. And all the judges being of this opinion, it is so ordered.

Reversed.