## Springton Coal Company v. Bowling et al.

(Decided March 8, 1929.)

318

FORESTER & CARTER for appellant.

POPE & HUFF for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellees and plaintiffs below, Ance Bowling and G. C. Daniels, by their petition filed in the Harlan circuit court against appellant and defendant below, Springton Coal Company, sought judgment against it for damages for the alleged breaching of a contract with plaintiffs for the mining of coal from its mine, and fixed the amount thereof at $1,364. They succeeded in obtaining a verdict for $800, which the court declined to set aside on defendant's motion made therefor, and from the judgment rendered thereon it prosecutes this appeal.

Plaintiffs' counsel in this court made a motion to strike the ''Bill of Evidence'' from the record, which was passed to a hearing on the merits, and we will first dispose of it. The bill of evidence is certified to by the stenographer who made it, and it was approved by the presiding judge, and is marked ''filed'' by the clerk of the court at the same term at which the bill of exceptions was filed, which was within the time given by the order extending the time for that purpose, and which extension order recited: ''And on its motion defendant is given

until and including the 17th day of the next term of this court to prepare and file its bill of exceptions herein." As a basis for this motion, it is argued that the order of extension should have also extended the time for the filing of the "Bill of Evidence," and, not having done so, it could not be filed at the extended time for the filing of the bill of exceptions. In the first place, there were no objections or exceptions to the filing of the transcript of evidence at the time it was done, and for that reason alone the motion would have to be overruled. But there is no merit in the contention, if there had been objections and exceptions to the filing at the time it was made. The bill of exceptions referred to it, and made the evidence a part of it, and the order recites that both of them were filed at the same time and made a part of the record, and which is a substantial, if not a literal, compliance with the Code provisions, and the universal practice on the subject. The motion therefore is overruled.

The petition, in alleging the contract for the violation of which damages were sought, said: "They state that on the 20th day of October, 1926, they entered into a contract with the defendant company, its agents and officers in charge, whereby the defendant company promised and agreed to pay to these plaintiffs the sum of 77½ cents per ton of coal of 2000 pounds, for each and every ton they should remove on contract out of No. 4 Left Straight Entry and No. 4 Left Back Entry of said defendant's mine and place all of said coal on the side track, all of said work being robbing work." Further along in the same pleading this language is employed: "Plaintiffs say that they could and would have removed all the workable coal assigned to them in the said contract and agreement with defendant company within a period of 12 months from the day and date of the said contract as aforesaid."

Defendant's demurrer to that pleading was overruled with exceptions, and, still relying upon the same defect, it moved for a peremptory instruction at the close of plaintiffs' testimony, which was also overruled with exceptions, and that motion was repeated with like results at the close of all the testimony in the case. The testimony of plaintiffs was no more definite as to the terms of the contract than were the inserted allegations from the petition, and it cannot therefore be insisted that the verdict cured the defect in the petition, if any. It will be observed that the allegations we have taken from

the petition (and which are all upon the subject) do not state any agreement upon the part of plaintiffs to mine any definite quantity of coal under their alleged contract, nor to take any specified quantity from any designated portion of defendant's mine, nor did it agree therein for plaintiffs to exhaust the coal from any portion of its mine. As averred in the petition, the contract was only one by which defendant agreed to pay plaintiffs the agreed price per ton for all the coal they mined from the two entries designated in the petition; but they could cease mining at any time they saw proper, and, if done, defendant would not be obligated to them, except for coal mined by them before they quit work. Under such a contract, either party may abandon it at any time without incurring liability to the other. The contract is what is known in law as a *unilateral* one, and, if one of the parties may abandon it at any time without incurring liability except for what had been done under it, the other may likewise do so. The precise question was before this court in the case of Daniel Boone Coal Co. v. Miller, 186 Ky. 561, 217 S. W. 666, and we held that: "It is a well recognized rule of law that where a party reserves the absolute right to cancel or terminate the contract at any time, mutuality is absent, and the contract, if executory, cannot be enforced." The cases of Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662, and Ellis v. Dodge Bros. (D. C.) 237 F. 860, are cited in support of that statement. An increased list of cases and authorities could have been cited to the same effect, since the principle stated is a fundamental one in the law. An analysis of the inserted language of the petition in this case reveals no obligation on the part of plaintiffs to mine any specified quantity of coal under their alleged contract, nor to take all the coal from any designated space or spaces in defendant's mine. They therefore, we repeat, could abandon or terminate their contract at any time, and under the principle of law referred to defendant could do likewise. The court therefore erred in overruling the demurrer filed to the petition, and likewise erred in overruling defendant's motion for a peremptory instruction.

In the case of Columbus Mining Co. v. Ross, 218 Ky. 98, 290 S. W. 1052, 50 A. L. R. 1394, and Ross v. Columbus Mining Co., 226 Ky. 166, 10 S. W. (2d) 628 (same case), we held that under a contract, in all respects similar to the one relied on here, the measure of recovery for its violation by the coal company did not include

wages for the services of plaintiff in performing the contract, and we directed in those two opinions the proper instruction for the measurement of plaintiffs' damages for a violation of his contract by the operator of the mine. Instead of following that rule, the instruction in this case on that issue (No. 3), as copied in the record, told the jury, if it found for plaintiffs, to find for them "the difference between the contract price (agreed to be paid for the mining of the coal) and the cost to the plaintiffs, *including* (our emphasis) a reasonable value for their own services," etc., and which was in direct conflict with the rule as laid down by us in the Ross cases, and for that reason also the judgment is erroneous, and must be reversed.

Defendant among its defenses relied on the fact that at the time the alleged contract was made it was not operating its mine, but had let its operation to an independent contractor who employed plaintiffs, and it claimed refuge under the doctrine announced by us in the case of Eutsler v. Huff, 222 Ky. 48, 299 S. W. 1070. There was a conflict in the testimony upon that issue, and the court properly submitted it to the jury over plaintiff's objections, which objections were based upon the doctrine announced by us in the cases of Interstate Coal Co. v. Trivett, 155 Ky. 830, 160 S. W. 728, and Employers' Indemnity Co. of Philadelphia v. Kelly Coal Co., 156 Ky. 74, 160 S. W. 914, 49 L. R. A. (N. S.) 850, to the effect that one engaged in mining operations cannot shield himself from statutory imposed duties by letting the operation of his mine to an independent contractor. But that doctrine, it will at once be observed, has no application to the facts of this case. This action is not attempted to be maintained upon the ground of statutory violations of imposed duty upon the operator of a mine; but only upon the violation of alleged contractual obligations relating to the extracting of coal from its mine, and in which the operator relinquished all control over the method of doing the work. The distinction was pointed out in the Eutsler case, and which clearly demonstrates that this contention of plaintiffs' counsel has no application to the facts of this case.

We find no other prejudicial error in the record; but, for the reasons stated, the judgment is reversed, with directions to grant the new trial, and for proceedings consistent with this opinion.