448 So.2d 1062 (1984)
Marvin MULKEY and Lorraine Mulkey, Howard Wickman and Martha Wickman, and Munford, Inc., Appellants,
v.
DIVISION OF ADMINISTRATION, STATE OF FLORIDA, DEPARTMENT OF TRANSPORTATION, Appellee.
No. 82-2609.
District Court of Appeal of Florida, Second District.
March 21, 1984.
Rehearing Denied April 30, 1984.
*1064 Robert L. Donald and Frank A. Pavese of Pavese, Shields, Garner, Haverfield, Dalton & Cottrell, Fort Myers, for appellants.
Alan E. DeSerio, John W. Scruggs, Jr., John H. Beck, Luther C. Smith, Tallahassee, for appellee.
OTT, Chief Judge.
This is an appeal from the award of damages in a condemnation action. We reverse and remand for a new trial on severance and business damages.
At the time of the taking, appellants Marvin Mulkey, Lorraine Mulkey, Howard Wickman, and Martha Wickman ("Landowners") owned a 75-foot by 130-foot rectangular parcel of property located on the southwest corner of the Edison Avenue and Fowler Street intersection in Fort Myers. The easterly 130-foot dimension of the parcel was immediately adjacent to Fowler Street, and the northerly 75-foot dimension was immediately adjacent to Edison Avenue. In 1964, the Landowners leased the entire northerly 63 feet of the parcel (being the part on the corner of Edison and Fowler) to Munford, Inc. The original lease term was twelve years. The lessee was given two five-year options to renew the lease, which it exercised in 1976 and 1982. In 1965, Munford completed construction of a Majik Market convenience store on the leased property and commenced operation. The southerly half of the parcel remained vacant, unimproved property, except for a small area where a billboard was erected and leased to a party not involved in the instant controversy.
In April, 1980, appellee commenced proceedings to take a strip of the entire parcel for the purpose of widening Fowler Street. The order of taking was issued in June, 1980. The road improvement project was completed in January, 1982. The actual taking consumed approximately twenty-six per cent of the parcel. Significantly, the taking eliminated five of the convenience store's eight parking spots. The remaining three parking spots were rendered unusable because of the installation of curbing along Edison Avenue.
In answers to the declaration for taking, the Landowners sought full compensation for the actual taking and severance damages to the remainder. Munford sought full compensation[1] and business damages. The case proceeded to trial for resolution of the question of damages. Trial occurred on September 28-30, 1982.
John Calhoun, a real estate appraiser, testified on behalf of appellee. He stated that the value of the Landowners' property was $5.17 per square foot. Accordingly, he averred that the Landowners were due $13,100 for the property actually taken. As to severance damages, Calhoun opined that the highest and best use of the entire property before the taking was commercial. In order to continue this use, Calhoun concluded that it would be necessary to relocate parking for the convenience store on the vacant lot, i.e., the southerly half of the parcel. Based on the cost of paving the vacant lot, the cost of reorienting the convenience store toward the vacant lot, removal of the billboard and the concomitant loss of the billboard lease income, the cost of the vacant lot (valued at $5.17 per square foot), and other incidental costs, Calhoun calculated severance damages to be $36,300. This approach to computation *1065 of severance damages was characterized as a "cost-to-cure" method. Calhoun also noted that customers of the convenience store, including himself, had used the vacant lot for parking prior to the taking. For his purposes, Calhoun treated the entire tract as one on the theory of a unity of use  namely, the operation, including parking, of the convenience store.
F. James DeLozier, Jr., a civil engineer testifying on appellants' behalf, noted that operation of the convenience store did not comply with local zoning ordinances after the taking, because it did not have the requisite minimum of five parking spaces. He also noted that local zoning ordinances permitted the erection of another commercial building on the vacant lot prior to the taking.
Larry Sewell, a real estate appraiser testifying on appellants' behalf, treated the parcel leased to Munford and the vacant lot as separate parcels for purposes of calculating severance damages. Sewell valued the property in such a manner because he believed there was not a unity of use between the properties. He seemed to concede on cross-examination that a unity of use would have existed had the vacant lot been paved and devoted to parking for the convenience of the store's patrons. Treating the parcels as separate, Sewell estimated the severance damages to the vacant lot at $14,000 and to the leased portion at $52,060.
Chris Holland, vice-president of Munford's Majik Market Division, testified that the convenience store's profit and loss statements for 1976-1981 showed profits and losses of ($1,638), $1,979, $7,734, $19,924, $22,658, $34,552, respectively. In the first eight months of 1982, the store experienced a profit of $6,824.
Based on an examination of the profit and loss statements, Basil J. Zaloom, a certified public accountant, calculated $186,994 in business damages for Munford.
In rebuttal, Certified Public Accountant Richard Davis presented three projections of business damages. The first option envisioned relocation of parking on a newly paved parking area on the vacant lot: $4,691. The second option foresaw relocation of parking on the unimproved, unpaved vacant lot: $14,798. The third option involved relocation of the store to another site and the loss of profits for six months: $12,856.
The jury awarded $36,300 in severance damages and $14,798 in business damages.
In their first point on appeal, appellants contend that the trial court erred in allowing the jury to consider appellee's cost-to-cure method of calculating severance damages because the method treated the leased property and the southerly lot as one unit.
When the state, through the exercise of its power of eminent domain, takes private property for public use, the landowner must receive full compensation for his loss. Art. X, § 6, Fla. Const. A landowner must also be compensated for damage to his property when less than an entire parcel is taken. § 73.071(3)(b), Fla. Stat. (1981); Kendry v. Division of Administration, State Department of Transportation, 366 So.2d 391, 393 (Fla. 1978); Lee County v. Exchange National Bank of Tampa, 417 So.2d 268, 269 (Fla. 2d DCA 1982), review denied, 426 So.2d 25 (Fla. 1983). These damages, so-called severance damages, are generally measured by the reduction in value of the remaining property. Kendry, supra, at 393. However, the courts have recognized that this general measurement of damages may be replaced by a cost-to-cure approach in instances where such cost is less than the decreased value of the remainder. See generally 4A P. NICHOLS, THE LAW OF EMINENT DOMAIN § 14.04 (Rev. 3d ed. 1981).
The parties agree that three factors must be established to treat adjoining properties as a single tract for purposes of computing severance damages: physical contiguity, unity of ownership, and unity of use. See County of Volusia v. Niles, 445 So.2d 1043 (Fla. 5th DCA 1984); DiVirgilio v. State Road Department, 205 So.2d 317, 319-320 (Fla. 4th DCA 1969). They also agree that the vacant lot and leased property *1066 share physical contiguity and unity of ownership, but disagree on the remaining factor of unity of use. Based on a lack of substantial evidence presented at trial that the leased property and vacant lot share a unity of use, appellants contend that the property was used as two distinct parcels as a matter of law. Appellee notes evidence that patrons of the convenience store have continuously parked in the vacant lot. Therefore, appellee asserts that a factual question on the unity of use was raised and that the jury ultimately decided the issue in the state's favor.
We disagree with appellee's position. The evidence presented at trial only indicated that patrons of the convenience store occasionally parked at will on the vacant lot. There is no indication that the southerly lot was intended to be used as a parking lot for the convenience store or that Munford held a legally recognized interest in the vacant lot. Based on these facts, the northerly and southerly parcels were not a single parcel for purposes of an award of severance damages as a matter of law. We also note that the trial court's charge to the jury did not include an instruction directing the jury to resolve this claimed factual dispute. Thus, even if we agreed with appellee that a factual question existed as to the unity of use factor, the question was never properly submitted to the jury.
The admission of appellee's expert testimony on severance damages was based on use of the property as a unified tract. The jury's award was clearly based on the figures calculated on this basis. The admission of such testimony constitutes reversible error in this case and, accordingly, we vacate the severance damages award.
Appellants' expert testimony on the question of severance damages remains as the only evidence on the issue. While we are tempted to enter an order awarding severance damages in an amount equal to his valuation, we note that the jury, as the ultimate trier of fact in this condemnation case, was not bound to accept the expert's valuation. See Behm v. Division of Administration, State Department of Transportation, 336 So.2d 579 (Fla. 1976); Tuttle v. Division of Administration, State Department of Transportation, 336 So.2d 583 (Fla. 1976). Indeed, the jury was authorized to return a verdict on the claim of severance damages in an amount less than the valuation offered by the condemnees' appraiser, even without rebutting testimony. See Division of Administration, State Department of Transportation v. Decker, 408 So.2d 1056, 1059 (Fla. 2d DCA 1981), review denied, 415 So.2d 1361 (Fla. 1982). Accordingly, we remand for a new trial on the question of severance damages.
In the second point on appeal, Munford contends that the trial court erroneously allowed the jury to consider portions of appellee's expert testimony on business damages. Munford contends that such testimony was improper, as it was based on a theory of mitigation which involved use of the vacant lot for parking by Munford.
The allowance of business damages in condemnation cases is not constitutionally required, but rather is a matter of legislative grace. § 73.071(3)(b), Fla. Stat. (1981); Tampa-Hillsborough County Expressway Authority v. K.E. Morris Alignment Service, Inc., 444 So.2d 926 (Fla. 1983). Business damages are in the nature of lost profits attributable to the reduced profit-making capacity of the business caused by the taking of a portion of the realty or improvements thereon. LeSuer v. State Road Department, 231 So.2d 265, 268 (Fla. 1st DCA 1970). In cases where an established business is totally destroyed by a taking of the business's adjacent property, business damages may include lost profits, costs attached to moving and selling equipment, and loss of good will. See Matthews v. Division of Administration, State Department of Transportation, 324 So.2d 664 (Fla. 4th DCA 1975). However, where business damages are identical to severance damages, the condemnee may not receive double recovery. See Glessner v. Duval County, 203 So.2d 330, 335 (Fla. 1st DCA 1967).
*1067 Appellee presented expert testimony in rebuttal on the question of business damages. Two of the expert's three options were based on a theory of mitigation which involved relocation of the business's parking onto the vacant lot. While we agree that a condemnee has a duty to mitigate his losses, we find that the expert's valuations involved a misconception of the law, as the two valuations were based on the ability of Munford to use a specific parcel of land outside the property over which it held a leasehold interest. See generally Nichols, supra, § 14.04 (cost of restoration to original condition not appropriate as mitigating factor of severance damages where restoration necessitates going outside the remaining portion of the tract). In addition, we note that the cost of effecting physical changes or modifications in the premises necessitated by a taking are in the nature of severance damages, not business damages. LeSuer, supra, at 267.
An expert's opinion that is based on a misconception of the law should be stricken. Stubbs v. State Department of Transportation, 332 So.2d 155, 157 (Fla. 1st DCA 1976). Because the jury's award of business damages was exactly the amount fixed by appellee's expert under his second option, we find that admission of the expert's testimony constituted prejudicial error requiring a new trial on the issue of business damages.
A new trial in this matter will occur years after the actual taking. As a result, many of the business damages figures that were estimated at trial have undoubtedly been realized. In an effort to award "full compensation," we believe it is appropriate to consider actual loss and damage figures, if they exist, on retrial. See Malone v. Division of Administration, State Department of Transportation, 438 So.2d 857, 863-864 (Fla. 3d DCA 1983) (where the Third District Court of Appeal ordered consideration of actual costs in a retrial of compensation to be allotted to moving costs in an eminent domain action).
REVERSED and REMANDED for a new trial consistent with this opinion.
HOBSON and CAMPBELL, JJ., concur.
NOTES
[1] Lessees are considered owners of property in the constitutional sense for purposes of entitlement to full compensation in eminent domain cases. State Road Dep't v. White, 148 So.2d 32 (Fla. 2d DCA 1962), aff'd, 161 So.2d 829 (Fla. 1964).